UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 1:19-CR-0696 (PAE) |
| | ) | |
| **ARI TEMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF DENIAL OF COMPASSIONATE RELEASE**

Eden P. Quainton
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
Tel: 212-419-0575
eden.quainton@quaintonlaw.net

## PRELIMINARY STATEMENT

Defendant Ari Teman ("Teman" or "Defendant") respectfully moves this Court to reconsider its decision dated January 24, 2024, denying Teman compassionate release. Dkt 414 (the "Decision"). In relying on medical records relating to Teman's cardiac and pulmonary functions, the Court overlooked evidence of Teman's neurological and auto-immune disorders that place him at grave risk of bodily harm and death. The outside doctor familiar with Teman's medical condition has elaborated on the statement in his initial letter to the Court that Teman's "survival" was at issue in his current conditions of confinement and has stated, in no uncertain terms, that Teman is currently at "grave, imminent risk of injury or death." In addition, because a motion for reconsideration is in the Court's discretion, Teman respectfully asks the Court to consider that he has become a positive force in the prison environment, teaching art to other inmates, deepening his spiritual connection with Judaism, and writing poignant and perceptive vignettes of life in prison, despite what a senior prison official describes as Teman's "obvious pain," "multiple medical emergencies," and "constant illness." Teman's situation warrants immediate release to home confinement and Teman respectfully asks the Court to reconsider its prior decision and grant such immediate release. Alternatively, Teman proposes that he continue to spend his days in prison, with nightly compassionate release so that he can receive the care he needs and avoid the most serious risks of bodily injury or death.

## LEGAL STANDARD

Under Local Criminal Rule 49.1(d), a motion for reconsideration "shall be filed and served within fourteen (14) days" of the Court's decision and explain "the matters or controlling decisions which counsel believes the Court has overlooked." Local Crim. R. 49.1(d)
*United States v. Pope*, No. 94-CR-631 (SHS), 2023 WL 2971500, at *1 (S.D.N.Y. Apr. 17, 2023)

1

(applying 14-day timetable for filing motion for reconsideration of denial of motion for compassionate release). The standards "governing criminal reconsideration motions are 'largely the same' as those governing civil reconsideration motions." *Id.* at *2 (quoting *Simon v. United States*, 2021 U.S. Dist. LEXIS 13368, at *2, 2021 WL 242360 (S.D.N.Y. Jan. 25, 2021). The moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *United States v. Pope*, at *2 (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995). The primary grounds for reconsideration of a court's decision are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (quoting *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). A decision granting or denying reconsideration is reviewed for abuse of discretion. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011).

## LEGAL ARGUMENT

Teman submits that in focusing on the availability of treatment for pulmonary and cardiac issues, the Court overlooked the real medical issues posing a risk to Teman's life that were identified in the letter to the Court of Dr. Alon Seifan. Dkt. 413 at 2. According to Dr. Seifan, who is Board-Certified in Neurology and UCNS-Certified in Behavioral Neurology & Neuropsychiatry:

> Ari meets diagnostic criteria for several, co-morbid Neuropsychiatric diagnoses most of which are exacerbated by sleep deprivation, psychosocial stressors, medical symptoms such as allergic and gastrointestinal and respiratory distress, and neurological symptoms including numbness and pain. It has come to my attention that through much of Mr. Teman's incarceration, he has reported suffering from fainting, falling, sleep deprivation, weight loss, nausea, dizziness, fever, shakes, weakness in his legs, and numbness on the left of his body. He has vomited and required transport by stretcher to the prison medical office. His diet has included less than 900 calories per day very often, which is partially related to his inability

2

> to eat dairy or wheat, and his limited kosher protein options. The environment he has been in is a common room of about 60 men, who themselves are coughing and flushing the in-room toilet several times per day. This environment has led to a significant disruption in his ability to sleep, which is essential for his mental and medical stability. The environment has also caused him significant stress and worry about spreading of material that could exacerbate his well-established immunological and respiratory symptoms. His condition has progressively worsened, having already started from a seriously at-risk level that required ready access to medical care and appropriate diet. The level of deterioration most likely has induced the fainting, falling, vomiting, headache, and numbness. Given that Ari already suffers from severe depression, **_all of these symptoms concern me as potentially threatening to his survival_**.

*Id.* (emphasis added).

Following the denial of Teman's motion for compassionate release, Dr. Seifan prepared an additional letter elaborating on his concerns and stressing that Teman's current conditions of confinement pose a serious risk of severe bodily injury and death:

> **_I am writing to re-iterate that Mr. Teman's health and life are in danger of permanent injury or death_**.
>
> The Government presented an argument regarding Mr. Teman's cardiopulmonary health which is not relevant to Mr. Teman's health problems. The Government and BOP suggest that because Mr. Teman's heart and lungs are clear, he is well. However, cardiological and pulmonary issues were never a concern. **_The medical record on the docket, and the records in the possession of the BOP, make clear that Mr. Teman's issues are neurological and inflammatory, not heart or lung related_**. This includes the swelling in Mr. Teman's brain following the spike protein infection (CT scan at Baptist), swelling in his spinal cord (Dr. Brusavonik), sudden loss of control of his limbs, and swollen turbinates requiring surgery (Dr. Grobman). It's possible that these conditions were caused by a viral infection. For example, viral infection can lead to autoimmune myeloencephalitis. **_Due to Mr. Teman's repeated episodes of syncope, Mr. Teman is at risk of death from head trauma_**. The compound is almost entirely made of hard surfaces, and the men are required to remain on hard surfaces (asphalt paths, concrete and tile floors, steel bed frames, etc.).
>
> The conditions that Mr. Teman is currently exposed to (most of the day he is an enclosed space with no fresh air with 60-150 men in the same space, with sealed doors and windows, with many of the men coughing and sneezing) place him at risk of a viral infection. Given that he had documented, severe neuro-immune reactions to a viral exposure in the past, he is at risk of this occurring again. Importantly, Mr.

3

> Teman is experiencing symptoms similar to those that were the presenting signs of his previous, serious neurological condition.
>
> ***At this point, Mr. Teman is at grave, imminent risk of injury or death from a fall, and/or from exacerbation of his previously documented neuroimmune condition.*** The Government's argument about Mr. Teman's cardiopulmonary health is not relevant to what is placing him at significant risk. Given his documented prior medical history, ***Mr. Teman would benefit significantly from an immediate and urgent compassionate release. I respectfully urge Your Honor to release Mr. Teman to his home and to allow his physicians to treat him immediately to avoid permanent harm or death***.

Declaration of Eden P. Quainton, dated February 7, 2024 (the "Quainton Decl."), at ¶ 2 and Ex. A, Letter of Dr. Alon Seifer, dated January 28, 2024.

These are not the self-serving words of a litigious inmate. These are the reasoned views of a board-certified neurologist and neuropsychiatrist, clearly the type of medical professional best suited to address Teman's particular condition and one unavailable at the prison facility where Mr. Teman is currently incarcerated. The Court overlooked Dr. Seifan's initial conclusion that Teman's "survival" was threatened. *See* Decision at 7 (citing from Seifan letter but overlooking language addressing threat to Teman's "survival"). Moreover, Dr. Seifan's medical opinion in his second letter constitutes new evidence the Court should consider and that warrants reconsideration of the Court's initial denial of compassionate release. Dr. Seifan states clearly that the Bureau of Prisons ("BOP") medical records do not address Teman's neurological and auto-immune issues that present a grave, imminent risk of injury or death from a fall, and/or from exacerbation of his previously documented neuroimmune condition. This evidence meets the exacting standards applied to a motion for compassionate release. *See* Decision at 8-11.[1]

---

[1] Teman notes that the BOP medical records do not reflect his "obvious pain," "constant illness," and "medical emergencies," as observed by a senior prison official. *See infra* at 5-6. These emergencies, which were also witnessed and recorded by Teman's case manager and a prison chaplain, involved Teman blacking out and falling and then being transported by stretcher and ambulance cart to the treatment room. Troublingly, neither an MRI or CT scan was ever performed, despite the clear risks posed by blackouts and falls for an inmate with Teman's neurological condition.

4

In addition, maintaining Teman at the Federal Correctional Institution ("FCI") Miami current facility where he is currently incarcerated, with the risks of severe bodily injury and death discussed, would constitute a manifest injustice. It was never contemplated that Teman would be incarcerated at FCI Miami, but rather that he would be assigned to the adjacent federal prison camp, given his status as a zero-point offender. The positive steps Teman has taken towards reform and rehabilitation notwithstanding the severe risks to his health and life strongly argue for eliminating risks that provide little incremental benefit to Teman's rehabilitation or protection to society. Prison officials have praised Teman for his positive attitude and contribution to prison life. Notably, Mr. Vashon Gadson, the Director of Education at FCI Miami, has recently affirmed:

> Ari Teman has been an exemplary inmate during the time I've interacted with him at FCI Miami Low.
>
> On his initiative, he created a 3D drawing class upon seeing how many men were interested in his daily sketching. He designed the instruction sheets and lesson plan, got supplies donated, and spent hours teaching and coaching men, despite his being frequently very sick and in obvious pain and having multiple medical emergencies.
>
> The class was sold out and men requested he do it again, which he did. Additionally, Mr. Teman can be seen almost daily coaching or tutoring men of all backgrounds and ages despite having no obligation, nor even knowing the men.
>
> Mr. Teman also gave us valuable ideas on how to encourage and incentivize men to learn more. He has even offered to return after his sentence, or should he be compassionately released so that he can recover from his constant illness, to teach the class at night and to help build a volunteer teaching program with members of the local communities.
>
> One young man, a teacher in our program, was embarrassed to meet his four-year-old son in prison. The boy was born shortly after his incarceration and has never met his father in person. Mr. Teman encouraged the man to meet his son, to write a children's book explaining to his son what his father has been going through, using the analogy of a boy sent to his room for stealing and distributing cookies (it was a drug offense), showing how his father was using the time to improve himself, and helped the young man create art for the book. He also helped the man create art to send his son as a gift. He also provided him helpful psychology books and encouraged him to initiate visits with his mother and the mother of the child. The young man's mood and outlook are markedly improved . . .

> Despite his very poor health and obvious pain, [[Mr. Teman] has continued to use his time to help and encourage others.
>
> It has been a pleasure to know Mr. Teman. He is polite and positive with all members of the staff and the men here, and a good role model for other men.

Quainton Decl. at ¶ 3 and Ex. B., Affirmation of Vashon Gadson, dated January 26, 2024.

Teman has also used his time to write poignant and understatedly profound vignettes of prison life, further attesting to the remarkable change in attitude he has already undergone. Quainton Decl. at ¶ 4 and Ex. C.  In one of Teman's vignettes, entitled, "Teaching Art in Prison," Teman pens the following two remarkable paragraphs:

> So being stuck in prison, forced to draw with cheap pen on random printer paper, had to be for a reason. The more guys asked about my drawing, the more faces lit up when I showed them tricks and had them try it themselves, the more teaching this drawing class felt like something I "had" to do. This gift, to be able to draw, and to have parents who invested in art classes throughout my life, felt like something G-d did not give me only for my own comfort – though surely drawing in prison and outside has been meditative and healing, and I highly recommend sketching your dreams and ideas for a few minutes every day.
>
> The more guys told me, "I can't draw," "I have no talent," "I'm not an artist," the more important it felt. Prison is full of men who have been told their whole lives what they can't do, how they're not worthy, or special, or lovable. In fact, that's why most of us are here, when you get to the core. Anything you can do to lift another man up, to show him he's special, capable, and able to create, add value, and help others, is G-dly, important work.

Quainton Decl., Ex. C at 8.

The change in Teman exemplified in his prison writings is further demonstrated in a recent letter addressed to the Court. Quainton Decl., at ¶ 5 and Ex. D., Letter from Ari Teman to Judge Paul Englemayer. Among Teman's many heartfelt comments, this one stands out:

> Judaism teaches that all men are made in G-d's image, and that no person is the best or worst thing they have done – we are not static objects, but everchanging spiritual beings with the capacity for redemption and growth. I failed to treat others with this reverence, and failed to even see that I could change.

Quainton Decl., Ex. D at 1.

The affirmation of Mr. Gadson, Teman's creative endeavors, and his moving letter should all be taken into consideration to avoid the manifest injustice of Mr. Teman's further incarceration in an environment that poses an extreme risk to his health and life. Teman respectfully submits that immediate release to home confinement would be the most judicious and prudent way to address this injustice and avoid this risk.

However, to balance the goals of society in advancing deterrence and promoting rehabilitation, while ensuring that a non-violent, immunocompromised Defendant does not suffer severe bodily harm or death, Teman proposes the following if the Court does not order full release to home confinement:

- Teman would remain in the custody of FCI Miami during the day until his projected release on May 14, 2024, and would only be released at night to home confinement. Quainton Decl., Ex. D at 1-2.

- Teman would perform the same prison duties and undergo the same prison restrictions as all other inmates during daytime and would continue to contribute to prison life with the educational and other activities identified in Mr. Gadson's letter and reflected in Teman's proposal to the Court. *Id.*

- Teman would be able to receive appropriate medical attention in a safe environment at night, while remaining under home confinement with a significant restriction on his liberty, consistent with his current sentence.

Teman would thus continue to serve his sentence and make a positive contribution to prison life but would avoid the serious risks presented by his current conditions of confinement on an upper bunk in a closed room packed with over 60 inmates and lacking air circulation—a potentially lethal nightly combination of risks for an immunocompromised Defendant with a serious neurological condition. *Id.*

## **CONCLUSION**

For the foregoing reasons, Teman respectfully requests that the Court reconsider its decision denying compassionate release, and on reconsideration, order that Teman be

compassionately released to home confinement for the remainer of his sentence, either on a full-time basis or at night with a daytime surrender to FCI Miami.

Dated: New York, New York
February 7, 2024

                                        Respectfully submitted,

                                        QUAINTON LAW, PLLC

                                        By: *Den Quainton*

                                              Eden P. Quainton
                                              2 Park Ave., 20th Floor
                                              New York, New York 10016
                                              Telephone: 212-419-00575
                                              Email: equainton@gmail.com

                                        *Attorneys for Defendant Ari Teman.*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on February 7, 2024 the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for the United States.

/s/ Eden Quainton
EDEN P. QUAINTON, ESQ.

2 Park Ave., 20th Fl.
New York, New York 10018
Telephone: (212) 419-0575
E-mail: eden.quainton@quaintonlaw.net
*Attorneys for Defendant Ari Teman*

9