UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

---

19 Cr. 696 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This order resolves a renewed motion from defendant Ari Teman for compassionate release from Federal Correctional Institution ("FCI") Miami. Dkt. 444. The Court has previously denied numerous such motions by Teman since he commenced serving his one-year-and-one-day prison term on October 10, 2023. The Court (1) on January 24, 2024, denied Teman's initial motion for compassionate release, Dkt. 414 ("CR Decision"); (2) on March 22, 2024, denied Teman's motion for reconsideration, Dkt. 434 ("Reconsideration Decision"); and (3) on four occasions thereafter, denied various *pro se* motions—by Teman, directly or through his parents—for his release, Dkts. 435, 437, 440, 442. Teman is scheduled to be transferred to a residential reentry center on May 14, 2024, and to begin home confinement on June 27, 2024. Dkt. 412, Ex. A ¶ 6.

The instant motion was fully briefed late on Monday, April 29, 2024. Because Teman's release from FCI Miami is less than two weeks away, this order is of necessity brief, in order to afford Teman a prompt outcome on his latest motion. The Court incorporates by reference its decisions above in their entirety, including their accounts of Teman's offense conduct, the basis for Teman's below-Guidelines sentence, the legal standards governing compassionate release

motions, and the Court's bases for denying Teman's previous motions. *See, e.g.*, CR Decision at 1–7; Reconsideration Decision at 1–4.[1]

For two reasons, the Court denies Teman's motion. These track the Court's bases in the CR Decision and the Reconsideration Decision for denying Teman's earlier motions.

First, measured against the standards set by the Sentencing Commission, Teman has not shown that extraordinary and compelling reasons warrant a reduction in his sentence, as required by 18 U.S.C. § 3582(c)(1)(A). To qualify for compassionate release, Teman would have to show that he has a medical condition requiring "long-term or specialized care that is not being provided" by FCI Miami and without which he is at "risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).[2] As the Court has explained, although the Court does not doubt that Teman "has found incarceration at FCI Miami arduous and unhappy," he has not adduced evidence that care for his medical conditions is not being provided by FCI Miami, or that he is at risk of serious deterioration in health or death. CR Decision at 12; Reconsideration Decision at 13.

---

[1] In resolving this motion, the Court has considered the parties' filings, to wit, Teman's brief, Dkt. 444 ("Def. Br."), and the letters in support from Dr. Georgiy Brusovanik, Dkt. 444, Ex. A ("Brusovanik Letter"), and Dr. Jonathan S. Harrison, Dkt. 444, Ex. B ("Harrison Letter"); the Government's brief in opposition, Dkt. 446 ("Gov't Br."), attaching Teman's voluminous BOP medical records, which have been filed under seal, Dkt. 446, Ex. A ("BOP Records"), and a form signed by Teman on April 23, 2024, in which he refused transport to Jackson South Community Hospital for further medical evaluation, also filed under seal, Dkt. 446, Ex. B ("Apr. 23 Form"); and Teman's reply brief, Dkt. 447 ("Def. Reply Br."), and a declaration in support by Eden P. Quainton, Esq., Dkt. 448 ("Quainton Decl.").

[2] Teman has not argued that he is eligible for compassionate release based on any other standard announced by the Commission—that is, that he has a "terminal illness" or other medical condition "from which he . . . is not expected to recover," U.S.S.G. § 1B1.13(b)(1)(A)–(B), or "is at increased risk of suffering severe medical complications or death as a result of exposure" to COVID-19, *id.* § 1B1.13(b)(1)(D).

In his most recent motion, Teman argues that his condition has deteriorated so as to now satisfy the governing criteria. He represents that he is in excruciating pain, perhaps resulting from degenerative back disease, Def. Br. at 2–3, and that he recently fell around 11 p.m. one evening and temporarily lost consciousness, Def. Reply Br. at 1–2. Letters from two physicians who examined Teman before his incarceration opine that Teman's symptoms require ongoing care, Brusovanik Letter at 1, and further evaluation, Harrison Letter at 1. These letters, however, are of limited probative value. Neither physician has engaged with, or indicates that he has read, the BOP's voluminous medical records with respect to Teman. Neither has examined Teman since his incarceration began. And the Court has already considered—and rejected—Teman's assertion that his medical conditions (in particular, complications relating to testicular pain) meet the standards for compassionate release. Reconsideration Decision at 11–13. Beyond the claim that Teman recently fell and lost consciousness, there is little new in his motion.[3]

Even crediting *arguendo* Teman's claim to be in great pain, the objective evidence does not establish Teman's eligibility for compassionate release. *See* Reconsideration Decision at 11–13 (reviewing Teman's medical records). As the Government notes, when Teman has reported his symptoms to BOP medical personnel, he has received appropriate treatment. For example, when Teman in February claimed severe testicular pain, the BOP transported him to a hospital in Miami, which examined him (and did not find him to have a serious medical condition). *See* Dkt. 426, Ex. A. That Teman was not seen until the morning after he fell does not suggest that

---

[3] Teman asserts that "the BOP has confirmed that Mr. Teman needs immediate care and that the failure to obtain proper diagnosis and treatment could result in 'lasting impairment and death.'" Def. Br. at 2. That claim is disingenuous. Teman quotes from a form that he signed on April 23, 2024, which warned him of the consequences of his decision to refuse to go to a local community hospital for evaluation, as offered by the BOP. Apr. 23 Form at 1. The warning relates to the potential consequences of Teman's *refusal* to follow a recommended course of treatment, not the consequences of Teman's *current medical condition.*

3

FCI Miami is incapable of providing Teman with the care he requires. On the contrary, FCI Miami again arranged for Teman to be transferred that day to an outside hospital, Jackson South Community Hospital, for a medical evaluation. BOP Medical Records at 1. Teman, however, refused that treatment, Apr. 23 Form at 1, objecting to BOP's insistence that he be transported in restraints, which he argues "can cause added injury," Def. Reply Br. at 2. The use of such restraints is, however, required by BOP policy. Gov't Br. at 2. And while such is uncomfortable and may cause Teman additional pain, the Government represents that BOP medical personnel have concluded that nothing in Teman's medical history counter-indicates his being transported in such a manner. It was Teman's prerogative to refuse the outside medical care and treatment offered to him, preferring to forego the discomfort of transport to an outside hospital. But having turned away the offer of such care and treatment, Teman may not be heard to argue that the BOP is incapable of furnishing him care for the underlying medical condition (if any) that precipitated his recent fall.[4]

Second, even assuming that Teman's medical conditions presented extraordinary and compelling reasons for release—and they fall far short of doing so—Teman's early release would disserve the sentencing factors enumerated in 18 U.S.C. § 3553(a). The Court has repeatedly so held in its decisions denying release. The Court incorporates here the reasoning there. *See* CR Decision at 18–22; Reconsideration Decision at 14–16. As explained there, the Court reached a "carefully considered judgment" at the time of sentencing "that a prison term of

---

[4] Teman separately argues for release on the ground that he has purportedly been approved for transfer to the satellite camp attached to FCI Miami, but that the transfer process could take several weeks. Def. Br. at 3. The Government represents, however, that no such transfer been authorized. Gov't Br. at 3. In all events, even were Teman's representation factually correct, this administrative circumstance would not have any bearing on his eligibility for compassionate release under the standards set by the Sentencing Commission.

4

12 months and 1 day [was] the minimum necessary to respect the § 3553(a) factors." Reconsideration Decision at 15. And in imposing a sentence well below the 30–37-month sentence recommended by the Sentencing Guidelines, the Court took various mitigating factors into account, including Teman's medical conditions and the extra rigors that sentencing stood to impose on him.

Teman argues that by now he has "served the bulk of his sentence," and at a facility more restrictive than the one the Court recommended to the BOP. Def. Br. at 3; *see also* Def. Reply Br. at 4. That argument is a non-starter. *See* Reconsideration Decision at 16. As the Court fully appreciated at sentencing, there was no guarantee that the BOP would assign Teman to the specific facility recommended by the Court. And at sentencing, the Court determined that a prison sentence of a year and a day was required to respect the § 3553(a) factors, including the interests in just punishment and promotion of respect for the law. These interests were weighty, the Court determined, given factors including the brazen $333,000 wire and bank fraud Teman had carried out, his vindictive treatment of the customers whose checks he fabricated for deposit, and his continuing failure to accept responsibility. *See* Reconsideration Decision at 15–16 & n.5.

The Court's assessment today remains that the § 3553(a) factors, viewed in combination, require the sentence imposed. The Court is hopeful that Teman, upon his forthcoming transfer to a residential reentry center, will find the conditions there less onerous, and will pivot his energies towards successful reentry into free society.

## CONCLUSION

For the reasons given above, the Court denies Teman's renewed motion for compassionate release.

The Clerk of Court is respectfully requested to terminate the motion at Docket 444.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: May 2, 2024
       New York, New York