UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

19-CR-696 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received the letter from the Government and the Probation Department, *see* Dkt. 474 ("G. Mem."), setting out their respective views on whether the Court should grant the request of defendant Ari Teman, *see* Dkt. 471, for (1) an indefinite extension of his present stay in Israel, and (2) if so, on a non-reporting basis. The Government opposes this application, while stating that it does not oppose the current conditions of supervised release governing foreign travel, which authorize Teman to travel internationally upon, *inter alia*, advance approval of such travel from the Probation Department and the Court. *See* G. Mem. at 2–3; *see also* Dkt. 454 (order of July 10, 2024, governing foreign travel). The Probation Department does not oppose an extension of Teman's time in Israel, based on his low risk of recidivism and his responsiveness to requests from the U.S. Probation Office; it proposes to monitor Teman telephonically and/or online. *See* G. Mem. at 3. The Court has also received a declaration from Teman's counsel supporting his request. *See* Dkt. 473 ("D. Mem.").

The Court requires additional information to evaluate the pending requests. The Court accordingly directs that the following submissions be filed, **by Friday, January 17, 2025**, from, respectively, the Probation Department and defense counsel. To give the Court time thereafter to

1

make an orderly assessment of the issues presented, the Court extends until **Wednesday, January 29, 2025**, the date on which—barring an intervening Court order—Teman must return to the United States. For avoidance of doubt, Teman should order his affairs, and arrange travel plans, in the expectation that the Court will not further extend this deadline.

## I.     Submission from the Probation Department[1]

The Probation Department's submission does not adequately explain how it has gone about supervising Teman to date, both while in Florida before leaving for Israel on September 18, 2024, which the Court authorized, *see* Dkt. 456, and thereafter while in Israel. In particular, the Court seeks information from the Probation Department on the following points.

***Mental health and anger management program***: The Court set the following as a special condition of supervised release: "*The defendant shall participate in an outpatient mental health and anger management program approved by the U.S. Probation Office.*" Dkt. 253 at 6 ("Judgment") (special condition no. 3) (emphasis added).

At sentencing, the Court explained why that condition was necessary. Teman's offense—defrauding a bank by drawing unauthorized checks on the accounts of three customers with whom he had been feuding—had arisen from his "disproportionate rage, a vendetta, an animus towards these three customers, essentially, because they were dissatisfied with your product and your work." Dkt. 276 at 72 ("Sent. Tr."); *see also id.* ("[T]he level of venom, hate, and zeal to retaliate that you displayed toward them is distressing. . . . [T]he venom . . . and lack of proportion appears to persist well after trial."); *id.* at 77 (Teman's conduct towards his customers "calls into question . . . whether you have a firm grip on business reality" and

---

[1] The Court directs Government counsel to furnish this order forthwith to the Probation Department, to work with the Probation Department to assure its submission is fully responsive to inquiries here, and to file the Probation Department's submission on the docket of this case.

2

"whether you might respond to a future business dispute by, again, escalating to the point where you cross a legal red line"); *id*. at 78 ("The record does not inspire complete confidence that once you're done serving your sentence, you will not take liberties with other people's money, particularly if you feel yourself provoked to anger by them."). Relatedly, Teman had later baselessly blamed his criminal prosecution and conviction "on [his] victims, on the prosecution team, on unnamed others in the United States Attorney's office, on the law enforcement witnesses, . . . on the court, on [his] most recent set of counsel . . . who [he] accused of conspiring to rig [his] prosecution with the U.S. Attorney's Office, and most recently on the custodial witness called by the bank." *Id*. at 78–79. The Court stated that "[i]n blaming others for your predicament, you have not only shown no remorse, you have shown no signs, zero[,] of the self-examination and self-awareness that is a key to future self-restraint." *Id*. at 79. The Court added:

> "Mr. Teman, I cannot pretend to grasp the turbulence and currents afoot [in] your complicated life[. But] from the PSR, from your counsel's submission, and from the anguished letter you wrote to the Court prior before trial, it is apparent that you suffer from a more abnormal degree of inner turmoil. The letter you wrote before trial was particularly anguishing to read. It suggested a great deal of inner turbulence. Although that turbulence can never justify ruses to take other people's money, I can understand how they can interfere with your self-control. The mental health issues that counsel have drawn to my attention, and which your parents powerfully describe, which are corroborated [by] the letters from mental health professionals that were attached to the defense sentencing submission—all that I regard as mitigating. To help assure that you get the treatment you need, I'll order [that] while you are in prison, the BOP furnish you with access to mental health and anger management programs that are available. I will further make participation in such programs a condition of the term of supervised release that will follow."

*Id*. at 81 (cleaned up).

The Probation Department's submission yesterday does not explain how, if at all, it has enforced this important special condition since the start of Teman's term of supervised release in Spring 2024. The submission ignores that vital condition altogether.

3

The Court therefore directs the Probation Department to set out in detail all mental and anger management programs in which Teman has participated in under the supervision of the Probation Department since his term of supervised release began. The Probation Department should set out the dates and nature of Teman's participation in such programs. It should also address whether and how such participation has continued since Teman relocated to Israel in September. The Probation Department should also set out the assessments of the mental health providers in such programs as to Teman's progress and current status.

If the Probation Department's judgment is that Teman has satisfactorily completed such programs in his brief period of supervised release to date, such that no further such participation is warranted, the Probation Department should concretely explain whether and why the mental health providers who have treated Teman under the Probation Department's supervision agree with that assessment.

The Probation Department should also explain whether and how, in reaching its assessment of Teman's ongoing need for mental health and anger management treatment, it has taken into account Teman's post-sentencing conduct. In particular, the Probation Department should address whether, in its view, the circumstances surrounding Teman's arrest in Miami Beach on March 12, 2023, *see* Dkts. 344, 356, 358, suggest a continued need for mental health and anger management counseling. The Probation Department should also set out whether, in its view, the tenor of Teman's written communications to which the Probation Department is privy, including Teman's email to Government counsel on November 6, 2024, *see* Dkt. 474, Ex. A,[2] are

---

[2] The Court directs Government counsel to publicly file, in unredacted form, the letter at Docket 474, and its attached Exhibit A. There is no need for these materials to be redacted.

4

consistent with a determination that Teman today exhibits the proportionality and balance consistent with the lack of a continued need for mental health and anger management counseling.

*Method of supervision*: More generally, the Court directs the Probation Department to chronicle its supervision of Teman to date. How often, on what dates, and by what means has the Probation Department met and communicated with him? What has been the substance of those communications? Insofar as the Court may be called upon to evaluate the Probation Department's assessment that remote supervision of Teman is viable, the Court would benefit from a more concrete account of Teman's supervision to date.

*Community service*: The Court set a special condition that Teman perform 300 hours of community service under the direction of the Probation Department. *See* Judgment at 6 (special condition no. 4). The Probation Department's submission yesterday was silent as to that special condition. How many hours of such service has Teman performed since his term of supervised release began? What has this community service consisted of?

The Court wishes to ensure that the Probation Department's recommendations as to the nature of and need for future supervision have been approved by a supervisor. It is imperative that any decision to approve lessened supervision be based upon a considered determination that the goals of supervision (including as reflected in the special conditions of supervised release set by the Court) have been achieved—and not on the desire by an individual Probation Officer to forego the aggravation of dealings with a difficult supervisee. The Court thus directs that the Probation Department's submission be signed not only by the Probation Officer assigned to this matter but also by the head of the Probation Office in the District of supervision.

## II. Submission from Defense Counsel

Defense counsel's submission states that travel to and from Israel is increasingly risky, citing an Associated Press ("AP") article to the effect that missiles from Houthi rebels have resulted in air raid sirens being set off in much of Israel, "keeping many foreign airlines away" to the detriment of Israel's "hard-hit tourism industry." *See* D. Mem. at 2. Counsel argues that these facts will make it either unsafe or impossible for Teman to leave Israel or to return to Israel see his parents. *See id.*

The defense's submission does not, however, document these conclusions, beyond citing the AP article describing the fact of the air raid sirens and the reduction in tourism. To the extent that the defense seeks to rely on these arguments, the Court directs the defense, in its submission due January 17, 2025, to submit evidentiary support for these two contentions. Concretely, to what extent is a safety risk currently presented to a person on a commercial flight between the United States and Israel? And, concretely, are flights currently realistically unavailable between the United States and Israel?

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 10, 2025
       New York, New York